CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

FEB 13 2019

JULIA C. DUDLEY, CLERK
BY: /s/ 
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JOHN PETER MISKA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:19CV00010 |
| | ) |
| THE CITY OF CHARLOTTESVILLE, | ) |
| | ) |
| Defendant. | |

## COMPLAINT

**COMES NOW** the Plaintiff, John Peter Miska, by and through the undersigned counsel, and alleges and avers as follows:

### INTRODUCTION

1. A fundamental and essential aspect of the liberty guaranteed to citizens by the United States Constitution is the right of free movement upon public streets, sidewalks and thoroughfares. Unless law enforcement officials have specific evidence that a person is involved in some criminal activity, they may not impede that person's freedom of movement upon public sidewalks and thoroughfares by requiring the person submit themselves to a search of their body and their possessions. Citizens are free to roam and loiter in public places and are not required to provide police with their identity or give an account of their purpose for exercising their freedom.

2. This case seeks to vindicate the loss of those rights by innumerable persons under ordinances and an emergency declaration issued in August of 2018 by the City of Charlottesville, Virginia, enacted and declared as a result of civil disorder that occurred in the City on August 12, 2017. Plaintiff John Peter Miska ("Miska"), a resident

of the Commonwealth of Virginia, citizen of the United States, and disabled Army veteran, was among those who were deprived of their Constitutional rights as a result of the ordinances and emergency declaration.

3. On August 11, 2018, Miska was, without any justification, seized by law enforcement officers, subjected to a search of his person and possessions, and eventually arrested for a violation of § 18-25 of the City of Charlottesville Code of Ordinances in violation of rights guaranteed to him by the Fourth and Fourteenth Amendments to the United States Constitution.

4. Because Miska's arrest was caused or carried out by the City of Charlottesville and its officers and agents, the Virginia State Police, and police officers or other persons acting under color of state law, Miska brings this suit pursuant to 42 U.S.C. § 1983 to obtain relief for the deprivation of his Constitutional rights and to prevent the City of Charlottesville from subjecting him and other citizens to similar deprivations in the future.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this civil action under 28 U.S.C. §§ 1331 and 1343, as it seeks relief for the deprivation of rights secured by the Constitution and laws of the United States and under an Act of Congress providing for the protection of civil rights.

6. This Court has jurisdiction over the claims seeking declaratory relief under 28 U.S.C. §§ 2201 and 2202.

7. Venue for this civil action properly lies in the Western District of Virginia under 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to this action

occurred within this District.

8. The Court has authority to award costs and attorney's fees pursuant to 42 U.S.C. § 1988.

## PARTIES

9. The Plaintiff, Miska, is a resident of Lynchburg, Virginia and a citizen of the United States.

10. The Defendant, the City of Charlottesville, is an independently chartered municipality, created and acting pursuant to the law of the Commonwealth of Virginia. In all respects set forth in this Complaint, the City of Charlottesville and its officers and agents acted under color of the law of the Commonwealth of Virginia.

## THE LAWS AT ISSUE

11. The Code of Ordinances of the City of Charlottesville ("City Code") § 18-25 provides in relevant parts as follows:

> The following conduct is declared to be unlawful and shall be, upon conviction, punishable as a class IV misdemeanor, unless a greater penalty is authorized and imposed in any other chapter of this Code or by the laws of the Commonwealth of Virginia: ...
>
> (e) The failure to comply during an event with any lawful directive of a law enforcement officer, or with any lawfully posted public sign, direction or instruction;...
>
> (i) Holding, carrying, displaying or using any prohibited item as defined herein within an area where an event is taking place with a permit;...
>
> (j) Holding, carrying, displaying or using any prohibited item as defined herein within a restricted area established by police officers as a security measure for or in connection with any event;...
>
> In addition to the criminal sanctions authorized herein, any person engaging in the unlawful conduct proscribed by this section, or who violates any section in this article, may also be held civilly

3

liable for any damages or loss, and may be banned from the future use of city-owned property for a specified period of time.

12. City Code § 18-22 provides, in relevant parts, as follows:

"Prohibited items" shall mean:

(1) All items prohibited by law from being held, carried, displayed, worn or otherwise used in public;

(2) Items banned from public or park lands;

(3) Any BB guns, pellet guns, air rifles or pistols, paintball guns, pellet guns, nun chucks, tasers, stun guns, heavy gauge metal chains, lengths of lumber or wood, poles, bricks, rocks, metal beverage or food cans or containers, glass bottles, axes, axe handles, hatchets, ice picks, acidic or caustic materials, hazardous, flammable, or combustible liquids, dogs (except service dogs), skateboards, swords, knives, daggers, razor blades or other sharp items, metal pipes, pepper or bear spray, mace, aerosol sprays, catapults, wrist rockets, bats, sticks, clubs, drones, explosives, fireworks, open fire or open flames, or other item considered an "implement of riot";

(4) Any items capable of inflicting bodily harm when these items are held or used in an intimidating, threatening, dangerous or harmful manner; and

(5) Law enforcement or military-like uniforms or uniform-like clothing, badges, insignia, shields, hats, helmets, masks, equipment and other items that when held, carried, displayed or worn tend to suggest or imply that the wearer is a current member of law enforcement, the military, a private militia, or other public safety organization, such as a fire department or emergency medical services agency.

13. City Code § 18-25 unduly burdens, discourages, and eliminates the liberty and right of law-abiding citizens to engage in lawful commercial activity and to move freely without restriction.

14. The Fourth Amendment guarantees the right of persons to be free from unreasonable searches and seizures by law enforcement and other government officials.

4

15. The Fourteenth Amendment secures the right of persons to be free from deprivations of liberty or property without due process of law.

## THE CITY'S DOWNTOWN MALL

16. Within the City of Charlottesville, there is an outdoor, pedestrian "walking mall" located on East Main Street ("Downtown Mall"). The Downtown Mall consists of several city blocks and is a popular destination for local residents and tourists for commercial and cultural activities.

17. The Downtown Mall is home to several restaurants, shops, offices, government buildings, and entertainment venues, including an outdoor amphitheater, movie theatres, and concert halls. It is often the site of special events and annual celebrations, and is closed to through-vehicle traffic except for two well-marked one-way streets.

18. Among the businesses on the Downtown Mall is a CVS Pharmacy, located at 208 East Main Street, which sells prescription drugs and numerous other goods for personal and household use.

## THE EVENTS OF AUGUST 12, 2017, AND THE CITY'S RESPONSE

19. On August 12 of 2017, the City of Charlottesville was the scene of protests and counter-protests that turned violently hostile, resulting in the hospitalization of several persons and the death of a young woman who was struck by a vehicle on the perimeter of the Downtown Mall.

20. Citing these 2017 events, the City of Charlottesville, through its City Council, passed several ordinances in February of 2018 that were meant to restrict the items that may be possessed at future events and demonstrations in the City and to regulate conduct at such events and demonstrations. These ordinances were subsequently

amended in July of 2018.

21. Of these new ordinances, the City of Charlottesville, through its City Council as its final policymaking authority, enacted City Code §§ 18-22 and 18-25, the latter of which provides for criminal punishment for violations.

22. On August 8, 2018, Virginia Governor Ralph Northam and the City of Charlottesville preemptively declared a "State of Emergency" for the City of Charlottesville for the weekend of August 10 through 12, 2018, and allocated several million dollars in state and local funds for security measures. The "State of Emergency" and other steps were taken in anticipation of events, rallies and protests within the City on the one-year anniversary of the unrest that took place in the City on August 12, 2017.

23. In addition to the State of Emergency, the City of Charlottesville authorized and implemented several restrictive security measures for the Downtown Mall and surrounding areas. These measures included the following:

   a. Deploying approximately 700 police officers, many of whom were equipped with riot gear, gas masks, and emergency vehicles;

   b. Limiting pedestrian access to the Downtown Mall to select entryways that were secured by law enforcement and requiring all persons entering the Downtown Mall to undergo security screenings of their person, purses, bags, and other effects;

   c. Closing several streets, parking areas, and public parks;

   d. Prohibiting persons from wearing masks, bringing dogs, or carrying the items designated as prohibited in City Code § 18-22;

24. The City did not issue a permit for any special event to take place on the

Downtown Mall during the period the restrictive security measures were in effect.

### THE IMPACT OF THE CITY'S ACTIONS ON THE PLAINTIFF

25. On Saturday, August 11, 2018, Miska, then a resident of Albemarle County, Virginia, went to the Downtown Mall intending to shop for personal items and to have lunch with an acquaintance. At this time, Miska was in legal possession of two firearms: one in a shoulder holster that was plainly visible and the other in a pocket of the shorts he was wearing.

26. In order to enter the Downtown Mall that day, Miska and all other persons were required, as a result of the enhanced security measures set forth in ¶¶ 23-24 above, to go through a security checkpoint where police officers stopped them and checked their person and belongings for items that were proscribed by City Code §§ 18-22 and 18-25.

27. As Miska was approaching the checkpoint that had been established where 2nd Street intersects with the Downtown Mall, Miska was approached by a Virginia State Police officer. The officer stopped Miska, indicated he knew Miska and asked Miska why he was going to the Downtown Mall.

28. Miska informed the officer he was there to buy items that were on sale at the CVS Pharmacy and to have lunch. He also told the officer that he was carrying two firearms. The officer asked if Miska's possession of the firearms was legal, and Miska replied affirmatively. After checking the firearms and Miska's person, the officer walked with Miska to the security checkpoint and told the other officers manning the checkpoint that he had checked Miska and that Miska could pass through the checkpoint onto the Downtown Mall.

29. This stop of Miska and the actions of law enforcement officers at the

7

security checkpoint were conducted pursuant to the official policy of the City of Charlottesville as set forth in City ordinances and the security measures declared for August 11, 2018.

30. During this stop at the security checkpoint, Miska and all other persons seeking to enter the Downtown Mall that day were subjected to a search of their person and effects without probable cause or individualized suspicion of wrongdoing, thereby invading their personal privacy and restricting them in their liberty to move freely.

31. Once on the Downtown Mall, Miska went to the CVS Pharmacy and proceeded to purchase otherwise-lawful, everyday items, including aerosol bug spray, cans of Arizona Iced Tea, a plastic package containing razor blades, and lightbulbs.

32. Several of these items were prohibited by the provisions of City Code §§ 18-22 and 18-25.

33. City Code §§ 18-22 and 18-25 are express policies of the City of Charlottesville enacted by its City Council, the City's final legislative policymaking authority.

34. Virginia State Police Sergeant S.W. Johnson ("Sergeant Johnson") was alerted to Miska's plans to purchase these forbidden items because Miska made statements about his intentions to go to CVS and shop to agents of the City of Charlottesville while proceeding through the checkpoint described in ¶¶ 26-29 above.

35. Sergeant Johnson, acting pursuant to and in execution of City of Charlottesville ordinances, stopped Miska immediately upon his exit from the CVS onto the Downtown Mall.

36. Sergeant Johnson noticed Miska was carrying cases of canned iced tea on

his walker and could see other items deemed "prohibited items" in Miska's plastic CVS bag.

37. Miska told Sergeant Johnson that he had common items for personal and household use and that he likes tea.

38. Because he had an appointment for lunch and his limited mobility would make returning for that appointment difficult, Miska refused Sergeant Johnson's request to leave the Downtown Mall with the "prohibited items." Miska was then arrested for a violation of City Code § 18-25.

39. Miska's items were seized, he was placed in handcuffs, secured in a police vehicle, and transported to the local jail. Although the iced tea, aerosol spray and other items were seized by the police and were the basis for Miska's arrest, Miska was allowed to keep possession of the firearms he had brought with him until he entrusted those firearms to an acquaintance before being secured in the police vehicle.

40. During law enforcement's attempt to shove Miska into a police vehicle that was too small for his frame, Miska suffered personal injuries, including abrasions to his left elbow and knee. Miska's shirt also was torn during the process of being pushed into the police vehicle. The police were forced to call for a larger vehicle to transport Miska.

41. On September 28, 2018, the criminal charge against Miska for violating City Code § 18-25 was dismissed after the Charlottesville City General District Court found City Code § 18-25 to be unreasonably overbroad in violation of due process, specifically because § 18-25 forbids the possession of otherwise-lawful household items that were continuing to be sold and used in plain sight and without restriction in the

9

regular course of business on the Downtown Mall.

42. In the General District Court proceedings, Sergeant Johnson stated that he and other members of law enforcement noticed other patrons on the Downtown Mall using glass or canned bottles while eating outside, but took no action to cite them for violating the City Code.

43. In public statements made by authorized officials, the City of Charlottesville has indicated its intent to implement and enforce a state of emergency and accompanying security measures of the kind described in ¶¶ 23-24, 27-29 above, on or about August 12 in future years due to the significance of that date and in anticipation of demonstrations and unrest similar to that which occurred within the City of Charlottesville on August 12, 2017.

44. Due to the restriction of Miska's liberties caused by the express policies enacted by the City of Charlottesville, Miska was harmed in several ways, including his arrest and physical detention, his exclusion from the Downtown area for the duration of the "Emergency," the physical harm to his person, the taking of his property, and the stop and search that took place at the security checkpoint when entering the Downtown Mall.

## COUNT I (DUE PROCESS)

45. The preceding paragraphs are incorporated herein.

46. City Code § 18-25 violates due process in that it does not provide fair notice to the citizen of what is proscribed and it is unreasonably subject to arbitrary and discriminatory enforcement.

47. City Code § 18-25 violates due process in that it is unconstitutionally vague and fails to establish minimal guidelines to guide police in its application and

enforcement, resulting in unjustified, unreasonable impairment of liberty that punishes otherwise wholly-innocent activity, and fails to adequately provide notice to ordinary citizens of what conduct is forbidden and what conduct is permitted.

48. City Code § 18-25 improperly entrusts lawmaking to the moment-to-moment judgment of law enforcement officers and fails to provide adequate notice in violation of due process.

49. The City of Charlottesville's implementation, enactment, and enforcement of City Code § 18-25 deprived Miska of his basic liberties of freedom and movement and therefore of his right to due process as guaranteed by the Fourteenth Amendment to the United States Constitution and incorporated to the States, entitling Miska to relief under 42 U.S.C. § 1983.

## COUNT II (UNREASONABLE SEIZURE AND SEARCH IN VIOLATION OF THE FOURTH AMENDMENT)

50. The preceding paragraphs are incorporated herein.

51. Miska was stopped, detained, and arrested pursuant to City Code § 18-25.

52. Miska's belongings were taken pursuant to City Code § 18-25 as items prohibited by City Code § 18-22.

53. The City of Charlottesville's enactment and enforcement of City Code §§ 18-22 and 18-25 and its declared State of Emergency caused Sergeant Johnson's arrest of Miska and deprived Miska of his right to be free, in his person and his effects, from unreasonable searches and seizures as protected by the Fourth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment to the United States Constitution, entitling Miska to relief under 42 U.S.C. § 1983.

## COUNT III (POLICE SECURITY CHECKPOINT - UNREASONABLE SEARCH & SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT)

54. The preceding paragraphs are incorporated herein.

55. In order to access the Downtown Mall, Miska was subject to a warrantless, and unreasonable seizure and search of his person and effects by police at the security checkpoint without individualized suspicion and was thereby restricted in his liberty to move freely.

56. The City of Charlottesville's enactment and enforcement of a policy that restricted entry to the Downtown Mall and required all patrons to be subject to a stop and search without individualized suspicion deprived Miska and other persons who passed through the security checkpoint of their right to be free, in their person and effects, from unreasonable searches and seizures as protected by the Fourth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment to the United States Constitution, entitling Miska to relief under 42 U.S.C. § 1983.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that the Court enter judgment in his favor as follows:

A. Declaring, pursuant to 28 U.S.C. §§ 2201 and 2202, that City Code § 18-25 violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

B. Declaring, pursuant to 28 U.S.C. §§ 2201 and 2202, that the City's order and directive restricting access to the Downtown Mall and requiring Miska and other citizens be subjected to a seizure and search at a security checkpoint violated the prohibition on unreasonable searches and seizures guaranteed by

12

the Fourth Amendment to the United States Constitution;

C. Ordering that the Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with the Defendant be permanently enjoined from enforcing City Code §§ 18-22 and 18-25 and any derivative regulations, and providing such further relief as is consistent with the injunction;

D. Ordering the Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with the Defendant be permanently enjoined from enforcing a policy of restricting access to the Downtown Mall and requiring all patrons to be subject to a stop and search at a security checkpoint;

E. Ordering the Defendant pay Miska monetary damages, in an amount to be determined at trial, he incurred as a result of the deprivation of his Constitutional rights, costs, attorneys' fees and expenses to the extent permitted under 42 U.S.C. § 1988; and

F. Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Elliott M. Harding

Elliott M. Harding, Esq.
VSB# 90442
*Counsel for the Plaintiff*
HARDING COUNSEL, PLLC
608 Elizabeth Ave.
Charlottesville, VA 22901
Tel: 434-962-8465
E: HardingCounsel@gmail.com

Participating Attorney for
THE RUTHERFORD INSTITUTE